**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TASTE OF NATURE, INC., a California corporation, | |
| Plaintiff, | Case No. 1:22-cv-03261 |
| v. | Honorable Judge John J. Tharp, Jr. Magistrate Judge Gabriel A. Fuentes |
| MRS. FIELDS FAMOUS BRANDS, LLC, a Delaware limited liability company, | **JURY TRIAL DEMANDED** |
| Defendant. | **REDACTED PUBLIC VERSION** |

**<u>FIRST AMENDED AND SUPPLEMENTAL COMPLAINT</u>**

Plaintiff TASTE OF NATURE, INC. ("TASTE OF NATURE") makes the following declaratory judgment and breach of contract claims for relief against Defendant MRS. FIELDS FAMOUS BRANDS, LLC ("MRS. FIELDS" or "LICENSOR") as follows:

**<u>NATURE OF THE ACTION</u>**

1.      This action arises from LICENSOR's repeated, willful and unlawful attempts to get out of a fair and mutually beneficial License Agreement that was entered into by the parties after arm's length negotiations. LICENSOR has manufactured pretextual excuses to do so so that it can get out of the License Agreement without ███████████████████████████████████ ████████████████████████████████████████████████ as required under the License Agreement. TASTE OF NATURE seeks (a) recovery of the actual damage which it has sustained as a result of LICENSOR's repeated, willful and unlawful breaches of the License Agreement and (b) a declaration that TASTE OF NATURE fully and properly performed all of its obligations under the License Agreement, that TASTE OF NATURE did not breach or default under the License Agreement, that LICENSOR did not properly terminate the License Agreement,

that the License Agreement was not terminated and remains valid, ongoing, and in full force and effect, and that the License Agreement continues to govern the parties' dealings under the provisions of the License Agreement notwithstanding LICENSOR's continued assertion that the License Agreement was terminated.

2.     TASTE OF NATURE is a candy and snack food manufacturing company that makes and sells food products to be distributed and sold through retailers nationwide. TASTE OF NATURE manufactures and markets a large variety of licensed and proprietary brands as a significant portion of its business.

3.     LICENSOR claims to be authorized to license or own "Mrs. Fields" trademarks and logos, which it uses in the restaurant and food service industry and in association with food products such as cookies, confectioneries, ice cream, and other baked goods.

4.     In August 2017, TASTE OF NATURE and LICENSOR entered into a license agreement, which, among other things, █████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████. A true and correct copy of the executed license agreement is attached hereto as **Exhibit A** and incorporated herein by reference.

5.     The August 2017 license agreement was amended on three occasions:

   a.     Amendment No. 1 to License Agreement, effective April 10, 2018;

   b.     Amendment No. 2 to License Agreement, effective July 23, 2019; and

   c.     Amendment to License Agreement █████████████████ ████████, effective September 25, 2020.

A true and correct copy of the executed amendments to the August 2017 license agreement is attached hereto as **Exhibit B** and incorporated herein by reference. The August 2017 license agreement, Exhibit A, together with all of its amendments, Exhibit B, shall hereafter be referred to collectively as the "License Agreement."

6.      From the commencement of the business relationship between the parties and to date, TASTE OF NATURE has fully and properly complied with the provisions of the License Agreement.

7.      In late 2021 and early 2022, LICENSOR began raising numerous, and meritless, complaints of TASTE OF NATURE's alleged failure to comply with the terms of the License Agreement. LICENSOR manufactured these complaints because it was apparently unsatisfied with and had "Buyer's remorse" about the financial terms of the License Agreement even though LICENSOR had negotiated and agreed to the terms of the License Agreement including the ███████████████████████ of the agreement. Notably, the early drafts of the agreement had ████████████████████████████████████████████████████████████ ██████████████████████████, but LICENSOR chose to ████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████. As a result, the License Agreement does not include any ████████████████████████ ██████████████████████████ are therefore not proper grounds to terminate the license.

8.      In response to LICENSOR's complaints and in accordance with the provisions of the License Agreement, TASTE OF NATURE took all required steps to respond in good faith, to

resolve, and/or to cure each of the alleged breaches of the License Agreement raised by LICENSOR.

9.      In a letter dated May 31, 2022, rather than acknowledging TASTE OF NATURE's full compliance with the License Agreement during the term of the agreement or TASTE OF NATURE's good-faith efforts to respond, to resolve, and/or to cure any alleged breach of the License Agreement asserted in LICENSOR's prior correspondence, LICENSOR, improperly, without any legitimate justification, and in bad faith, attempted to terminate the License Agreement and has continued to take the position that the License Agreement is terminated.

10.      By this action, TASTE OF NATURE seeks to have this Court enter a judgment declaring that TASTE OF NATURE fully and properly performed all of its obligations under the License Agreement, that TASTE OF NATURE did not breach or default under the License Agreement, that LICENSOR did not properly terminate the License Agreement, that the License Agreement was not terminated, remains valid, ongoing, and in full force and effect, and that the License Agreement continues to govern the parties' dealings under the provisions of the License Agreement. TASTE OF NATURE also asserts a claim for breach of contract against LICENSOR for its bad-faith repudiation and improper attempted termination of the License Agreement and its ongoing and persistent refusal to perform its obligations under the License Agreement, which have damaged, undermined and otherwise harmed TASTE OF NATURE's business, reputation, and good will in the marketplace. TASTE OF NATURE expects LICENSOR's breach and ongoing assertions of termination will continue to cause actual, concrete, and ongoing harm to TASTE OF NATURE at least in the form of lost business, lost sales, and decreased value of its goodwill.

## THE PARTIES

11.     TASTE OF NATURE is a corporation organized and existing under the laws of the State of California, with its principal place of business at 2828 Donald Douglas Loop N., Suite 100, Santa Monica, California 90405.

12.     Upon information and belief, LICENSOR is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 1717 S 4800 W, Salt Lake City, Utah 84104.

13.     Upon information and belief, the sole member of LICENSOR's limited liability company is Mrs. Fields Original Cookies, Inc., a corporation organized and existing under the laws of Delaware, with its principal place of business at 1717 S 4800 W, Salt Lake City, Utah 84104.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States, specifically, TASTE OF NATURE is a citizen of California and LICENSOR is a citizen of Delaware. The Court may grant declaratory and other relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202. TASTE OF NATURE seeks a declaration that TASTE OF NATURE fully and properly performed all of its obligations under the License Agreement, that TASTE OF NATURE did not breach or default under the License Agreement, that LICENSOR did not properly terminate the License Agreement, that the License Agreement was not terminated and remains valid, ongoing, and in full force and effect, and that the License Agreement continues to govern the parties' dealings under the provisions of the License Agreement.

15. This Court has personal jurisdiction over TASTE OF NATURE at least because it is the plaintiff herein and because it manufactures products that are the subject of this action and otherwise transacts business in Illinois.

16. This Court has personal jurisdiction over LICENSOR because at all times relevant hereto, it has been doing business in the State of Illinois and, specifically with respect to the subject matter of this action, has transacted business in Illinois. LICENSOR has engaged in minimum contacts with the State of Illinois.

17. This Court also has personal jurisdiction over the parties because the parties consented to the jurisdiction of this Court pursuant to the License Agreement that is the subject of this Complaint, which includes the following provision:

> 20.12 **Jurisdiction and Venue**. Each party to this Agreement hereby irrevocably consents and agrees that any legal action, suit or proceeding arising out of or in any way in connection with this Agreement shall be instituted or brought in any state or federal court sitting in or nearest to Chicago, Illinois. Each party hereby irrevocably submits itself, for itself and in respect of its property, generally and unconditionally, to the jurisdiction of and waives any objections to venue in such court, and to all proceedings in such court.

As the U.S. District Court for the Northern District of Illinois is the federal court sitting in and nearest to Chicago, Illinois, the parties have consented to this Court's personal jurisdiction.

18. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district. At a minimum, venue in this judicial district is proper under 28 U.S.C. § 1391(b)(3) because LICENSOR is subject to the court's personal jurisdiction with respect to this action.

19. Venue is also proper in this District because, as shown above, Section 20.12 of the License Agreement provides that any legal action arising out of the License Agreement shall be

instituted in any state or federal court sitting in or nearest to Chicago, Illinois. As the federal court sitting in Chicago, Illinois, the U.S. District Court for the Northern District of Illinois is an appropriate and consented-to venue.

## FACTS COMMON TO ALL CLAIMS

## BACKGROUND ON TASTE OF NATURE

20.     TASTE OF NATURE, founded in 1992, is a rapidly growing candy and snack food manufacturing company that makes and sells a wide variety of snack and other food products to be distributed and sold through retailers in the United States. It manufactures and markets a large variety of licensed and proprietary brands as a significant portion of its business.

21.     As part of its business, TASTE OF NATURE has operated a 135,000-square-foot facility in Melrose Park, Illinois and has recently moved to a new facility in Wheeling, Illinois which employs over 100 workers from the greater metropolitan area of Chicago and beyond.

22.     TASTE OF NATURE's product lines include a selection of snacks, cookies, gummi candies, Cookie Dough Bites®, edible cookie dough, cotton candy and seasonable candies and treats. One highly important product line for TASTE OF NATURE's business is Mrs. Fields® shelf stable cookies that TASTE OF NATURE has made and sold pursuant to the License Agreement.

23.     By entering into the License Agreement, TASTE OF NATURE became "responsible for the manufacturing, sales and distribution of Mrs. Fields pre-packaged shelf stable cookies … to virtually all classes of trade and sold at grocery and retail locations throughout North America and more than 20 countries worldwide," as jointly announced on August 28, 2017 by Famous Brands International and TASTE OF NATURE, which LICENSOR called "a proven industry leader with a 25-year track record of success."

24.     To support and maintain the Mrs. Fields brand that is the subject of the License Agreement, in reliance of the rights and obligations set forth in the License Agreement, and to help grow the Mrs. Fields brand with its retailer partners as part of a long-term partnership with LICENSOR, TASTE OF NATURE has made significant investments in its manufacturing facilities and materials, its labor force, establishing and upgrading its marketing and distribution channels, employee training, its packaging and artwork design, product research and development, and its communication channels with actual and potential customers. For example, upon entering the License Agreement, TASTE OF NATURE signed a multi-year lease for an additional 35,000 square feet of manufacturing space and purchased new equipment to manufacture licensed products. TASTE OF NATURE also paid slotting fees to retailers to gain placement for licensed products on retailers' shelves.

## BACKGROUND ON LICENSOR

25.     LICENSOR is a Delaware limited liability company with its principal place of business in Salt Lake City, Utah. LICENSOR is one of numerous "Mrs. Fields" corporate entities that make up a complex web of related companies and/or affiliates that includes at least "Mrs. Fields Famous Brands, Inc.," "The Mrs. Fields' Brand, Inc.," "Mrs. Fields' Original Cookies, Inc.," "Mrs. Fields Franchising, LLC," "Mrs. Fields Holding Company, Inc.," "Mrs. Fields Manufacturing, Inc.," "Mrs. Fields Franchising Company, Inc.," "Mrs. Fields Gifting and Licensing LLC," and "Mrs. Fields Confections, LLC." Together, these "Mrs. Fields" branded entities operate multiple lines of business, including: (1) franchising stores that serve fresh-baked cookies; (2) licensing the "Mrs. Fields" trademark and recipes to make and sell shelf-stable cookies for sale in retail stores such as grocery, drug, and convenience stores; (3) making online and

catalogue-based gift sales directly to consumers; and (4) producing confections and other food products.

26.     During the term of the License Agreement, LICENSOR and its affiliated and/or related entities have been ultimately owned as portfolio companies of a private equity firm named Z Capital Partners, LLC, found and led by its founder and CEO James Zenni, and, since October 2023, Pearl Street Equity, which is also James Zenni's family office.

27.     Over the past 15 years, LICENSOR has experienced significant and numerous changes in ownership, financial difficulties, and failed attempts to sell itself and/or its business. In 2011, LICENSOR narrowly avoided bankruptcy and was acquired by its creditors, Z Capital Partners and The Carlyle Group. In 2013, Z Capital Partners acquired full ownership of LICENSOR and its affiliated and/or related entities. In 2015, Z Capital Partners, in coordination with Stifel Financial Corporation, attempted to sell LICENSOR, but ultimately failed to do so. In 2018, Z Capital Partners again tried to sell LICENSOR, this time in coordination with Duff & Phelps, but once again the company was not sold. In October 2023, LICENSOR was acquired by Pearl Street Equity, which is a family office of James Zenni, the founder and CEO of Z Capital Partners, which previously owned LICENSOR.

28.     LICENSOR has also experienced unusually frequent changes in ownership and leadership. Under the ownership of Z Capital Partners, LICENSOR had at least eleven (11) different chief executive officers (CEOs) or interim CEOs, including a four-year period during which six (6) different individuals served as its chief executive officer in seven separate tenures.

29.     In addition to the License Agreement at issue in this action, LICENSOR entered into other trademark licensing agreements, a number of which resulted in litigation due to improper

termination or other disputes over such license agreements, some of which mirror LICENSOR's conduct that led to this lawsuit, including:

    a.    *Mrs. Fields Franchising, LLC v. MFGPC, Inc.*, Civil Action No. 2:15-cv-00094(D. Utah); and

    b.    *The Mrs. Fields Brand, Inc. v. Interbake Foods, LLC*, Civil Action No. 12201-CB (Del. Ch.).

    30.    In *Mrs. Fields Franchising, LLC v. MFGPC, Inc.* (D. Utah), Mrs. Fields Franchising attempted to terminate its license agreement for exclusive use of the "Mrs. Fields" branded pre-packaged popcorn granted to MFGPC, Inc. purportedly based upon alleged breaches of the license agreement on the part of MFGPC. In that case, the district court granted MFGPC's motion for summary judgment (Civil Action No. 2:15-cv-00094, Dkt. No. 132) finding that MFGPC substantially performed under the license agreement, and that Mrs. Fields Franchising improperly repudiated the license agreement, thereby committing an actionable breach. The district court later awarded damages and attorneys' fees to MFGPC and against Mrs. Fields Franchising.

    31.    In *The Mrs. Fields Brand, Inc. v. Interbake Foods, LLC*, Interbake Foods was the licensee that held the license for "Mrs. Fields" branded pre-packaged, shelf-stable cookies immediately prior to TASTE OF NATURE's term as licensee. During the license term, MRS. FIELDS apparently grew unhappy with Interbake Food's sales performance, and the evidence showed that MRS. FIELDS internally expressed a desire to "break" or "modify" the license agreement. MRS. FIELDS began to frustrate Interbake Food's ability to operate under the license, to the point that Interbake Foods attempted to terminate the license agreement. MRS. FIELDS then brought suit against Interbake Foods for improperly terminating the license agreement, and both parties sued each other for breach of contract claims. Ultimately, the court found that the license agreement between the parties remained valid and in place and urged the parties to work together

in a reasonable way over the remaining six (6) months of the license term to effectuate a transition in a business-like manner. Civil Action No. 12201-CB (Del. Ch.), Dkt. No. 196.

32.     LICENSOR has taken similar steps that courts in the above-referenced cases found to be to unreasonable and improper to repudiate and attempt to terminate the License Agreement with TASTE OF NATURE.

## LICENSING AGREEMENT

33.     On August 24, 2017, LICENSOR and TASTE OF NATURE entered into the License Agreement regarding █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

34.     In exchange for █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

35.     The License Agreement provides ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Exhibit A, Section 1(h).

36.     The License Agreement also provides █████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████."

Exhibit A, Section 1(h)(x).

 37. The License Agreement further provides that ████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████. Exhibit A, Section 1(h).

 38. Section 7.2 of the License Agreement includes ████████████████:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████.

 39. The License Agreement also provides that:

███ ████████████████████████████████████
██████████████████████████████████
████

██ ██████████████████████████████████████
████████████████████████████████████████████
████████████.

 40. The License Agreement further provides provisions for ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████:

██ ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████

██████████████████████████████ .

41.     The License Agreement also provides ██████████████████████████

████████████████████████████████████████ :

██ █████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████ .

42.     From the time of entering into the License Agreement until late 2021, the parties enjoyed a mutually beneficial business relationship in accordance with the provisions of the License Agreement. Starting in the fourth quarter of 2021, LICENSOR began to make pretextual demands and complaints that were neither justified nor set forth in the License Agreement.

43.     For example, on November 15, 2021, Nelson Tejada, CEO of Famous Brands International at the time, sent a letter on behalf of LICENSOR to TASTE OF NATURE:

a.     Alleging that certain ████████████████████████
████████████████████████████████████████
██████████████████████ ;

b.     Incorrectly stating that ██████████████████████
█████████████████ ;" and

c.     Requesting certain information including ██████████████
████████████████████████ .

A true and correct copy of the November 15, 2021 letter is attached hereto as **Exhibit C,** and incorporated herein by reference.

44.     To address LICENSOR's concerns, TASTE OF NATURE responded to LICENSOR's November 15, 2021 letter on the same day:

a.  Requesting a list of ███████████████████████████
████████████████████████████████████████████
████████ ██████ ██████ ████ █ ████ ████████ ██████ █
██████ ;

b.  Explaining that ████████████████████████████████
████████████████████████████████████████████
████████████████████ ; and

c.  Acknowledging that ██████████████████████████████
██████ .

A true and correct copy of TASTE OF NATURE's November 15, 2021 email responding to prior correspondence is attached hereto as **Exhibit D** and incorporated herein by reference.

45.  Following the parties' November 15, 2021 correspondence, TASTE OF NATURE requested that LICENSOR provide a ████████████████████████████████
████████████████████████ , including via a November 24, 2021 email. A true and correct copy of TASTE OF NATURE's November 24, 2021 email responding to prior correspondence is attached hereto as **Exhibit E** and incorporated herein by reference.

46.  LICENSOR did not respond to TASTE OF NATURE's November 15, 2021 request for the list of ████████████████████████ ," or November 24, 2021 request for ████████
████████████████ . LICENSOR also did not dispute TASTE OF NATURE's explanation of ████████████████████████████████████ .

47.  ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████ .

48.  TASTE OF NATURE was successful in having ████████████████████
████████████████████████████ .

- 14 -

49.     In addition, promptly after LICENSOR's November 15, 2021 letter, TASTE OF NATURE ███████████████████████████████████████████████ ███████████████████████████████████████.

50.     On January 18, 2022, Nelson Tejada sent another letter to TASTE OF NATURE on behalf of LICENSOR requesting that TASTE OF NATURE ████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████. A true and correct copy of the January 18, 2022 letter is attached hereto as **Exhibit F** and incorporated herein by reference.

51.     TASTE OF NATURE responded to Mr. Tejada's letter that same day, reiterating its prior requests for information to aid in TASTE OF NATURE's efforts to assist LICENSOR in ███████████████████████████████████████████████████████ ████████████." TASTE OF NATURE also explained:

████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████ Please let me know so I can help address these issues. If you're available for a call this week, I would welcome it.

A true and correct copy of the January 18, 2022 email is attached hereto as **Exhibit G** and incorporated herein by reference.

52.     On January 21, 2022, TASTE OF NATURE provided LICENSOR a summary of █████████████████████████████████████ in response to LICENSOR's November 15, 2021 and January 18, 2022 letters. A true and correct copy of the January 21, 2022 email is attached hereto as **Exhibit H** and incorporated herein by reference.

53. Thereafter, TASTE OF NATURE continued to expend its time and resources attempting to prevent any ███████████████████████████████. TASTE OF NATURE did so with, at times, little cooperation from LICENSOR. For example, when asked to provide specific information and documentation regarding LICENSOR's purported intellectual property, LICENSOR merely directed TASTE OF NATURE to find the information on its own. A true and correct copy of this correspondence, which includes an April 3, 2022 through April 6, 2022 email chain, is attached hereto as **Exhibit I** and incorporated herein by reference.

54. LICENSOR requested an audit on February 28, 2022. A true and correct copy of the February 28, 2022 email is attached hereto as **Exhibit J** and incorporated by reference.

55. To facilitate the audit, on March 11, 2022, the parties entered into a non-disclosure agreement to further protect confidential and proprietary information disclosed or revealed in connection with the audit. A true and correct copy of the March 11, 2022 non-disclosure agreement is attached hereto as **Exhibit K** and incorporated by reference.

56. On April 1, 2022, outside counsel for LICENSOR sent a letter to TASTE OF NATURE incorrectly alleging that:



a. TASTE OF NATURE allegedly breached ███████████████████ ██ ██ ██ █████ ███████ ████ ██ ██ █████ ██ █████ ████████████████ ;

b. ████████████████████████████████████ ████████████████████████ in alleged breach of Sections 1(h)(x) and 2 of the License Agreement; and

c. Licensed products were █████████████████ .

A true and correct copy of the April 1, 2022 letter is attached hereto as **Exhibit L** and incorporated herein by reference.

57.     On or around April 1, 2022, regardless of whether it was obligated to provide various documents under ███████████████████████████████, TASTE OF NATURE electronically provided numerous documents to LICENSOR including ████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████.

58.     On April 8, 2022, TASTE OF NATURE sent a letter to LICENSOR, disputing that TASTE OF NATURE had breached any provision of the License Agreement and explaining:

a.      Section 7.2 of the License Agreement only requires ████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████;

b.      LICENSOR incorrectly claimed that ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████; and

c.      TASTE OF NATURE was not ████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████.

A true and correct copy of the April 8, 2022 letter is attached hereto as **Exhibit M** and incorporated herein by reference.

59.     On April 26, 2022, outside counsel for LICENSOR sent a letter to TASTE OF NATURE requesting an in-person audit of TASTE OF NATURE "over the next ten (10) business

days" and asking that TASTE OF NATURE "███████████████████████████████

███████████████." The letter also incorrectly alleged:



A true and correct copy of the April 26, 2022 letter is attached hereto as **Exhibit N** and

incorporated herein by reference.

60.     TASTE OF NATURE responded to LICENSOR's counsel on April 29, 2022 again

rejecting LICENSOR's allegations of breach and explaining:

A true and correct copy of the April 29, 2022 letter is attached hereto as **Exhibit O** and

incorporated herein by reference.

61.     TASTE OF NATURE further provided an updated summary of ███████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████.” A true and correct copy of the May 1, 2022 email and

attachment are attached hereto as **Exhibit P** and incorporated herein by reference.

62.     In early May 2022, Steven Gilroy of Gingold & Company, LICENSOR's auditor,

visited the offices of TASTE OF NATURE to conduct an audit on behalf of LICENSOR, and was

allowed by TASTE OF NATURE to conduct the audit in accordance with the License Agreement.

63.     On May 17, 2022, Steven Gilroy sent an email to TASTE OF NATURE with

follow-up inquiries and requests for additional information and documents.

64.     TASTE OF NATURE promptly replied on the very same day to the auditor's email

seeking clarification on the documents requested by the auditor in an attempt to sufficiently

comply with the auditor's request. A true and correct copy of the May 17, 2022 email chain

between TASTE OF NATURE and Steven Gilroy is attached hereto as **Exhibit Q** and incorporated

herein by reference.

65.     LICENSOR and LICENSOR's auditor ignored TASTE OF NATURE's May 17,

2022 email seeking clarification of the auditor's request for additional information and

documentation.

66.     Instead, on May 31, 2022, an attorney for LICENSOR sent a letter to TASTE OF

NATURE purporting to provide LICENSOR's notice of termination of the License Agreement

based upon two incorrect factual assertions that:

a.      ███████████████████████████████████████████

██████████; and

- 19 -

b. ██████████████████████████████
██████████████████████████████
████████████████████ .

A true and correct copy of the May 31, 2022 letter is attached hereto as **Exhibit R** and incorporated herein by reference.

67.     As explained in the June 21, 2022 letter by TASTE OF NATURE to LICENSOR, LICENSOR's purported notice of termination is factually and legally unsupportable, relies on incorrect factual assertions and ignores the express provisions of the License Agreement:

As an initial matter, Licensor has not met the procedural requirements to terminate the Agreement. ████████████████████████
████████████████████████████████████
██████████████████████ ████ ████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████

████████████████████████████████████
████████████

In addition to the procedural failures of the attempted termination, the termination fails on numerous substantive grounds, including those summarized below.

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

─────────────────────
[1] [Footnote 1 of June 21, 2022 Letter] ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████



████████████████████████████████████████████████
███████████

████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████ In short, TON fully
complied with ████████████████████████ under the Agreement. Any
allegation to the contrary does not reflect TON's obligations under the Agreement.

In summary, we dispute ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
is grounds for termination.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████ ▌
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████

Based on the foregoing, Licensor's notice of termination fails under any of the
grounds enumerated in Section 15.2. Accordingly, TON considers the Agreement
to remain in full force and effect.

A true and correct copy of the June 21, 2022 letter is attached hereto as **Exhibit S** and incorporated

herein by reference.

---

[2] [Footnote 2 of June 21, 2022 Letter] ██████████████████████████████
██████

68.    Since TASTE OF NATURE initiated this lawsuit in June of 2022, LICENSOR has continued to harass TASTE OF NATURE with accusations of a purported breach of the License Agreement and repeatedly threatened to take legal action against TASTE OF NATURE if it continues to manufacture and sell products under the License Agreement.

69.    On August 18, 2022, counsel for LICENSOR sent TASTE OF NATURE a letter, concerning what it alleged were "ongoing and material breaches of the License Agreement." Among other things, LICENSOR accused Taste of Nature of failing to comply with ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████." LICENSOR also falsely asserted that ███████

████████████████████████████████████████████████████████████████

██████████████████████████████." Going well beyond merely making threats of a potential termination of the License Agreement, ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████." A true and correct copy of the August 18, 2022 letter is attached hereto as **Exhibit T** and incorporated herein by reference.

70.    In an October 7, 2022 letter, LICENSOR doubled down on its erroneous position that the License Agreement had already been terminated, asserting that "[Taste of Nature's] continued unauthorized use of Mrs. Fields' trademark ***post-termination subjects [Taste of Nature] and [Taste of Nature's] customers to litigation and damages.***" (emphasis added). LICENSOR further threatened:

> In the event TON continues its unauthorized sale of Mrs. Fields' branded products and continues to fail to notify its customers of the termination of the License

> Agreement (including its inability to continue selling any product under the Mrs. Fields trademark), Mrs. Fields will contact such customers itself in order to protect its brand. Please note, any sales of Mrs. Fields' branded products by TON are unauthorized and Mrs. Fields may hold TON and its customers liable for the ongoing breaches and infringement of Mrs. Fields' intellectual property rights.

A true and correct copy of the October 7, 2022 letter is attached hereto as **Exhibit U** and incorporated herein by reference.

70. TASTE OF NATURE responded on October 18, 2022, and disputed LICENSOR's assertions as follows:

> Contrary to Mrs. Fields' unsupported assertions in your letters, Taste of Nature has not conceded that Mrs. Fields had or has the right to terminate the License Agreement. Nor does Taste of Nature agree with your incorrect and unsupported characterization that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆. Once again, I refer you to Taste of Nature's Complaint, which sets forth why Mrs. Fields lacked any legitimate basis to attempt to terminate the License Agreement and why its bad faith attempt to do so was improper and ineffectual.
>
> Given Taste of Nature's position that the License Agreement was not terminated and remains valid, ongoing, and in full force and effect, Taste of Nature does not agree that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Mrs. Fields' demands for ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ in your correspondence assume, erroneously and without legitimate bases, that the License Agreement has been terminated.
>
> Similarly unwarranted are Mrs. Fields' requests that Taste of Nature notify its customers of Mrs. Fields' attempted, but improper and unsuccessful, termination of the License Agreement. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ In its October 7, 2022 letter, Mrs. Fields even goes so far as to threaten to take matters into its own hands by contacting Taste of Nature's customers to notify them of the purported termination, knowing full well that the parties disagree on that very issue, and the issue is currently being litigated in the federal district court in Chicago.
>
> Mrs. Fields' resort to such extra-judicial, self-help actions on the issues currently pending in litigation would be wholly inappropriate in any event, but particularly while motion practice is pending before the Court. Such improper self-help actions by Mrs. Fields appear to be designed to inflict harm on Taste of Nature's business,

reputation and customer relationships by trying to encourage customers not to purchase from Taste of Nature, tortiously interfere with Taste of Nature's existing and future business opportunities and relationships, and otherwise frustrate Taste of Nature's ability to maintain and grow its business. Please be assured that any such anti-competitive and illegal actions by Mrs. Fields will be met with swift responses by Taste of Nature.

Finally, we note that your August 18, 2022 letter makes an unsupported and false assertion that ███████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ .

In short, for all of the reasons set forth in this letter and as alleged in Taste of Nature's complaint, Taste of Nature disagrees with Mrs. Fields' meritless assertion that the License Agreement between the parties has been terminated. In any event, that very issue is the subject of the ongoing litigation between the parties, and any extrajudicial anti-competitive action by Mrs. Fields, including those threatened in Mrs. Fields' recent correspondence would be improper and subject Mrs. Fields to further potential liability in litigation.

A true and correct copy of the October 18, 2022 letter is attached hereto as **Exhibit V** and incorporated herein by reference.

71.     LICENSOR did not substantively respond to TASTE OF NATURE's October 18, 2022 letter. Instead, on November 4, 2022, LICENSOR repeated ██████████████ ████████████████████████████████████████████ ██████████████████████████████." LICENSOR also fabricated yet another basis to terminate the License Agreement, asserting that ████████████████ █████████████████████████████████████████████████ ██████████████." LICENSOR's November 4, 2022 letter requested that TASTE OF NATURE comply with █████████████████████████. A true and correct copy of the November 4, 2022 letter is attached hereto as **Exhibit W** and incorporated herein by reference.

72.     TASTE OF NATURE responded to LICENSOR on December 3, 2022, disputing LICENSOR's November 4 assertions, stating that the License Agreement "has not been terminated and remains valid, ongoing, and in full force and effect, and continues to govern the parties' dealings." TASTE OF NATURE further stated as follows:

> The November 4, 2022 letter is the first time Mrs. Fields has even attempted to notify Taste of Nature of ███████████████████████████████ ███████████████████████. Thus, at the outset, Taste of Nature disagrees that Mrs. Fields has properly or adequately provided ████████████ ████████████," as Mrs. Fields erroneously asserts. ████████████ ██████████████████████████████████████████ ████████████████████████████████████

> The information provided for the first time in Mrs. Fields' November 4, 2022 letter reveals that ████████████████████████████████████ ██████████████████████████████████████████ ███████████████████. For example, in its May 31, 2022 letter, Mrs. Fields alleged that ███████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████." In both instances, Mrs. Fields cited ████████████████████████████. Since the data source is the same, the only explanation for a different alleged result is that Mrs. Fields itself cannot even decide what should be included in this analysis and is using these purported notice of breach letters to set up a pretext to terminate the License Agreement.

> In particular, based on the tables Mrs. Fields provided with its November 4, 2022 letter, it appears that Mrs. Fields has artificially and without legitimate bases ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████. The inconsistencies in Mrs. Fields' calculations improperly move the goal post, and do not reflect commercially reasonable or good faith conduct on Mrs. Fields' part.



In addition, Mrs. Fields' self-serving selection of ███████████████ ████████████████████████ in its November 4, 2022 letter is improper. Notably, over the life of the License Agreement, Mrs. Fields has never voiced any concern over or identified ███████████████ ████████████████████████ that suddenly appeared in Mrs. Fields' latest letter for the first time. Again, Mrs. Fields' shifting and arbitrary selections ████████████ reveal its result-oriented contortion of facts and contractual terms and ultimately its bad faith in dealing with Taste of Nature.

Given Taste of Nature's position that the breaches alleged by Mrs. Fields are without merit, factually and legally, and that the License Agreement has not been terminated and remains valid, ongoing, and in full force and effect despite Mrs. Fields' bad faith attempts to terminate the agreement, Taste of Nature does not agree that ████████████████████████████████████████████ ████████████████████████. Again, Mrs. Fields' demand for compliance ██████████████ erroneously assumes that the License Agreement has been terminated, with which Taste of Nature disagrees as alleged in Taste of Nature's complaint and otherwise in the litigation.

A true and correct copy of the December 3, 2022 letter is attached hereto as **Exhibit X** and incorporated herein by reference.

73.     On February 3, 2023, counsel for LICENSOR contacted counsel for TASTE OF NATURE and directed TASTE OF NATURE to direct all communications to LICENSOR through counsel, despite the clear reporting provisions of the License Agreement.

74.    On February 17, 2023, TASTE OF NATURE responded through counsel as follows:

> Thank you for your email regarding our client's good-faith efforts to fully comply with the reporting obligations set forth in the license agreement between the parties. As our client has stated repeatedly, in correspondence and court filings, it is our client's position that the agreement was never terminated, as you and your client assert, and continues to govern the parties' respective rights and obligations.
>
> Your one-sided directive that our client must discharge its reporting obligations under the license agreement only through counsel is without merit and, in any event, does not and cannot change the clear provisions of the license agreement that our client believes is in force. Thus, our client will continue to comply with the terms of the license agreement that govern its rights and obligations on reporting in the manner set forth in the agreement.
>
> As a professional courtesy to you, we will also provide a courtesy copy of our client's correspondence with your client. I trust that addresses any concern you may have on this issue.
>
> Finally, you state that you previously provided a new address that our client should use for reporting purposes. Please provide us with formal written notice of any such change as set forth in the license agreement. We will make sure that the new address is used for future communications between the parties.

75.    A true and correct copy of the February 3-17, 2023 email chain is attached hereto as **Exhibit Y** and incorporated herein by reference.

76.    LICENSOR did not provide formal notice of the new correspondence address as requested. Instead, on April 21, 2023, LICENSOR responded by reasserting its unsupported assertions that TASTE OF NATURE breached the License Agreement and repeating its threats "to hold TON accountable" for non-compliance with the post-termination provisions of the agreement. A true and correct copy of the April 21, 2023 letter is attached hereto as **Exhibit Z** and incorporated herein by reference.

77.    On October 11, 2024, LICENSOR's litigation counsel, not LICENSOR's designated representative pursuant to the License Agreement, sent a letter to TASTE OF NATURE

alleging again that the License Agreement "was terminated and TON's ongoing conduct is in breach of the Agreement."

78. The October 11, 2024 letter by LICENSOR's litigation counsel also alleged that ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████████████."

79. Notably, █████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

80.     In a letter dated October 31, 2024, attached as Exhibit AA and incorporated herein by reference, TASTE OF NATURE highlighted the serious business problems that LICENSOR's failures to comply with the terms of the License Agreement had caused for TASTE OF NATURE to effectively operate under the terms of the License Agreement:

> In the meantime, your allegations, if anything, raise a serious business problem that your client has caused for Taste of Nature to effectively operate the terms of the license agreement. Your client continues to go through upheavals and other challenges in its management team which have frustrated Taste of Nature's efforts to communicate with MFFB in connection with the licensing agreement between the parties. For example, our client has had to deal with no less than five (5) CEOs of MFFB during the past 7 years, and every single business contact at MFFB for our client from the beginning of the business relationship has either been fired or quit MFFB. Thus, contrary to your representations, business contacts at MFFB in licensing, quality assurance, finance and all other upper levels of management are no longer with the company or are turned over to new employees without any notice to Taste of Nature as to who the new contacts should be.

> Again, contrary to your representations about MFFB communicating alleged customer quality control complaints to Taste of Nature, Taste of Nature has not received any emails back from MFFB for over two (2) years despite Taste of Nature's repeated attempts to contact your client. For example, Taste of Nature's emails to your client executives have failed to receive any response from MFFB, and some of those emails from Taste of Nature received a "bounce back" suggesting that the intended email recipient was no longer working at MFFB and no one else is monitoring these incoming emails. In fact, our client's email sent this week to Julie Girardot, MFFB's Vice President of Finance, was bounced back, and her LinkedIn profile now indicates that she is no longer with MFFB. Taste of Nature's other efforts to contact MFFB have also fallen on deaf ears with no response from its then-CEO (Nelson Tejada) or other senior management team personnel of MFFB.

> Taste of Nature's repeated attempts to contact MFFB for months have been made even more difficult by MFFB's apparent shuttering or relocation of its headquarters facility without a forwarding address. As such, in addition to the information being requested above, please provide to Taste of Nature promptly MFFB's headquarters address as well as the name, title and email address of each contact with whom Taste of Nature would need to communicate in connection with the license agreement.

81.     Instead of providing any documentation to substantiate its claims regarding alleged customer complaints, LICENSOR's litigation counsel continued to make unsubstantiated threats, again claiming in a November 22, 2024 letter that TASTE OF NATURE's "ongoing conduct is extremely risky for TON and its potential liability to consumers and to Mrs. Fields."

82.     LICENSOR's harassment and repeated threats of enforcement action purportedly based on its false assertion that the License Agreement has been terminated have caused actual, concrete, and ongoing damage to TASTE OF NATURE and, unless and until LICENSOR is enjoined from continuing to engage in its wrongful conduct, will cause further harm to TASTE OF NATURE in the immediate future.

83.     Since LICENSOR's alleged termination in early 2022, TASTE OF NATURE has been unable to effectively communicate with LICENSOR in connection with the License Agreement. LICENSOR has undergone a number of personnel and management changes since 2022 without any notice to TASTE OF NATURE. Many of TASTE OF NATURE's business contacts in licensing, quality assurance, finance and upper levels of management are no longer with LICENSOR or have failed to engage in communications with TASTE OF NATURE in connection with the License Agreement. In addition, LICENSOR has not provided TASTE OF NATURE with the necessary contact information for new personnel based on LICENSOR's position that the License Agreement has been terminated. As a result, most of TASTE OF NATURE's communications sent to LICENSOR for official business under the License Agreement have been ignored by LICENSOR as if the License Agreement is terminated. In some instances, TASTE OF NATURE has received "bounce back" emails indicating that the intended email recipient is no longer working with LICENSOR or LICENSOR is refusing to communicate with TASTE OF NATURE.

84.    One example of direct and actual harm and damages suffered by TASTE OF NATURE as a result of LICENSOR's false allegation that the License Agreement is terminated is its inability to obtain ███████████████████████████████████████████████████████ ████████████████████████████████████. For example, on July 1, 2022, TASTE OF NATURE sent an email to LICENSOR requesting ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. This loss of business from ███████████████████████████████████████ for TASTE OF NATURE caused by

- 32 -

LICENSOR's refusal to comply with the terms of the License Agreement on the basis that the agreement was terminated has caused actual and direct harm to TASTE OF NATURE, exceeding in actual damages of at least ████████.

85.     TASTE OF NATURE has also been damaged because its efforts to expand its business have been thwarted by LICENSOR's actions, threats, harassment and refusal to communicate with TASTE OF NATURE and the uncertainty that they have caused. Since 2022, Taste of Nature has not been able to fully pursue ████████████████████████ ████████████████████████████████████████████████████. For example, TASTE OF NATURE has been forced to reduce its sales efforts to gain shelf placement as a result of LICENSOR's threats and alleged termination due to the risk of not being able to supply its customers with licensed products. For those large retail customers with slotting fees, such fees must be paid upfront to get licensed products onto the shelves of grocery chains. As a result of LICENSOR's repeated claims of the termination of the License Agreement and ensuing threats and harassment, TASTE OF NATURE has passed up opportunities to sell the licensed products to a number of large retailers including ████████████████████████ ██████████.

86.     Further, based on its false allegations that TASTE OF NATURE has breached the License Agreement and that the License Agreement is purportedly terminated, LICENSOR has made repeated, ongoing threats to take legal action against TASTE OF NATURE if TASTE OF NATURE does not immediately comply with ████████████████████, including by ███████ ████████ ████████ ███ ████████ ██ ████████ ████████. These threats, harassment and demands by LICENSOR continue to date leading to actual, direct and continuing harm and damages to TASTE OF NATURE the inability to fully reap the financial and other

benefits █████████████████████████████████, not to mention legal expenses that TASTE OF NATURE would not have had to spend but for LICENSOR's unlawful attempt to terminate the License Agreement without having to █████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████.

87.     LICENSOR has also expressly threatened to disrupt TASTE OF NATURE's current and future business relationships with its customers by contacting TASTE OF NATURE's customers to tell them that the License Agreement has been terminated, which would result in potentially irreparable reputational harm, damage to TASTE OF NATURE's goodwill, and loss of competitive positioning in the marketplace. Indeed, LICENSOR affirmatively stated on October 7, 2022 that "Mrs. Fields will contact such customers itself in order to protect its brand." *See* Ex. U.

88.     Because of LICENSOR's harassment and threats, not to mention its stated intention to contact TASTE OF NATURE's customers, all based on its false assertion that the License Agreement was terminated, TASTE OF NATURE is operating in a virtual state of limbo created by LICENSOR's unsupported threats of enforcement action and threatened interference with TASTE OF NATURE's business and customers. LICENSOR's repeated unjustified and false claims of termination of the License Agreement have created a hardship and dark cloud over TASTE OF NATURE's ability to continue to conduct business as usual under the License Agreement and inhibited its ability to grow the license business. For example, not only is TASTE OF NATURE unable to █████████████████████████████████ █████████████████, TASTE OF NATURE has also been thwarted in other attempts to grow its

business such as ████████████████████████████████████████

██████████████████████████████████████ .

89.    For now, because of LICENSOR's wrongful assertion that the License Agreement has been terminated and other wrongful conduct described above, TASTE OF NATURE is forced into a Hobson's Choice of (a) continuing to conduct business (even if limited and constricted by LICENSOR's continued threats and harassment) which it believes it is permitted to do, and risk facing charges of trademark infringement and other claims from LICENSOR or (b)stopping its manufacture and sale of the licensed products, ████████████████████████████ ████████████████████████████████████████, prematurely losing out on the benefits it bargained for and negotiated in the License Agreement including ████████████ ███████████████████████████████ and further risking damaging its relationships and goodwill with current and future potential customers, and suppliers.

90.    LICENSOR's actions have prevented TASTE OF NATURE from operating to the fullest extent under the License Agreement by preventing TASTE OF NATURE from being able to freely carry out existing contracts and purchase agreements, preventing TASTE OF NATURE from planning for the stocking of ingredients, production of products, and distribution of products to customers pursuant to the existing contracts, as well as preventing TASTE OF NATURE from executing its previously-negotiated contracts with new customers without subjecting itself to threatened enforcement action or customer interference from LICENSOR.

91.    Further, TASTE OF NATURE's efforts to purchase raw materials, ingredients, and packaging to fulfill current orders have become increasingly difficult in light of LICENSOR's alleged termination. When purchase orders are made, materials are ordered weeks in advance and are meant to last for months. The uncertainty caused by LICENSOR's alleged terminations and

continued threats and harassment has made it difficult for TASTE OF NATURE's purchasing department to decide whether it should be acquiring materials to fulfill orders when the future of the License Agreement is in doubt. This is particularly true in light of ██████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████." Ex. A, at Section 10.

## COUNT I – DECLARATORY JUDGMENT

92.     The allegations of paragraphs 1 through 91 are repeated and incorporated herein by reference.

93.     An actual, definite controversy exists between TASTE OF NATURE and LICENSOR as to whether LICENSOR improperly repudiated and terminated the License Agreement based on alleged breaches or defaults by TASTE OF NATURE, whether the License Agreement remains valid, ongoing and in full force and effect, and whether the License Agreement continues to govern the parties' dealings.

94.     In its May 31, 2022 letter, LICENSOR purported to terminate the License Agreement under Section 15.2(e), but each of the alleged bases for the purported termination is deficient and incorrect.

95.     TASTE OF NATURE has neither failed to perform any term or condition of the License Agreement nor committed any alleged default continuing unremedied for thirty (30) days after any written notice of default from LICENSOR.

96.     LICENSOR claims in the May 31, 2022 letter, incorrectly and as a basis for the purported termination of the License Agreement, that TASTE OF NATURE allegedly failed to comply with the audit provisions of the License Agreement.

97.     However, TASTE OF NATURE has fully complied with every provision of Section 7.2 of the License Agreement. For example, it allowed LICENSOR's auditor to visit TASTE OF NATURE's office to audit relevant books and records on May 9, 2022. TASTE OF NATURE also responded on the very same day to the auditor's May 17, 2022 follow-up request for additional information. In short, TASTE OF NATURE has fully complied with the auditing provisions of the License Agreement including allowing an onsite audit by LICENSOR's auditor and providing and offering to provide all relevant documents required under the License Agreement.

98.     Accordingly, LICENSOR's attempted termination of the License Agreement based on any alleged "non-compliance" with the audit provision of the License Agreement is improper, unjustified and invalid.

99.     LICENSOR also claims, incorrectly and as another basis for the purported termination of the License Agreement, that TASTE OF NATURE allegedly allowed its sales of the licensed products to value/deep discount/dollar stores to exceed 20% of TASTE OF NATURE's total net sales.

100.     TASTE OF NATURE's sales in the value/deep discount/ dollar store channel, as shown in its financial records provided to LICENSOR, have never, at any time, exceeded 20% of its total net sales from all royalty-bearing products as expressly set forth in Section 1(h)(x).

101.     Accordingly, TASTE OF NATURE has not breached the License Agreement, LICENSOR has no legitimate basis to attempt to terminate the License Agreement, and the License Agreement remains valid, ongoing and in full force and effect, and continues to govern the parties' business dealings as set forth in the License Agreement.

102.     As set forth in paragraphs 66 to 91 above, LICENSOR has repeated its erroneous assertion that the License Agreement was terminated throughout its written correspondence with

TASTE OF NATURE in 2022, 2023, and 2024. Thus, the parties' controversy over whether the agreement is terminated has continued to exist from prior to initiation of this lawsuit to the present.

103.    Therefore, to redress the harm caused by LICENSOR's wrongful conduct, TASTE OF NATURE is entitled to a declaratory judgment that TASTE OF NATURE fully performed all of its obligations under the License Agreement, that TASTE OF NATURE did not breach or default under the License Agreement, that LICENSOR's attempt to terminate the License Agreement is improper, that the License Agreement was not terminated, remains valid, ongoing and in full force and effect, that the License Agreement continues to govern the parties' dealings and that, ████████████████████████, TASTE OF NATURE is entitled to an award of reasonable costs and expenses in enforcing and/or interpreting the License Agreement in this lawsuit, including a reasonable accounting and legal fees.

## COUNT II – BREACH OF CONTRACT

104.    The allegations of paragraphs 1 through 103 are repeated and incorporated herein by reference.

105.    The License Agreement is a valid and enforceable contract between TASTE OF NATURE and LICENSOR.

106.    During the term of this License Agreement, TASTE OF NATURE has at all times fulfilled and continues to fulfill and perform all, or at least substantially all, of its obligations and duties under the License Agreement.

107.    LICENSOR has materially breached the License Agreement by, among other things, improperly repudiating and attempting to terminate the Agreement under Section 15.2(e) of the License Agreement without proper cause so that it can avoid ████████████████████

████████████████████████████████████████████

████████████████████████████████████████ .

108.    In addition to the License Agreement's express terms, ████████████████

████████████████████████████████████████████

████████ , LICENSOR is bound by the implied covenant of good faith and fair dealing read into the License Agreement's express terms, requiring LICENSOR to exercise its discretion under the License Agreement reasonably, with proper motive, and in a manner consistent with the reasonable expectation of the parties such as to prevent the business purpose of the Agreement from being frustrated. This includes exercising its discretion as a licensor in manners that the parties would have agreed to had they given the matter explicit consideration during drafting of the License Agreement, as required by the overall structure of the License Agreement and the trade customs and practices in the industry. Such implied duties relevant to this dispute include, without limitations:

a.    A licensor would sufficiently support the licensed brand and trademark through investment in brand development and management and engaging in adequate trademark quality control to maintain the value of the licensed trademark and brand;

b.    A licensor would not interfere with a licensee's business already approved by the licensor by making, among other things, false allegations of breach for authorized sales made to a business segment authorized in their license agreement;

c.    A licensor would not unreasonably withhold a licensee's new business proposals submitted to the licensor for approval under the license agreement on the basis of false allegations of breach of the license agreement on the part of the licensee;

d.    A licensor would review licensee reports and conduct audits, and communicate relating to such reports and audits, in a commercially reasonable way and in good faith;

e.    A licensor would not fabricate allegations of breach of the license agreement to attempt to terminate the license agreement for reasons

unrelated to the licensee's business dealings under the license agreement; and

f.  A licensor would not attempt to terminate a license agreement on fabricated and improper grounds knowing such improper attempted termination would result in immediate and lasting harm, monetary and non-monetary, including that for which there is no adequate remedy at law.

109.  LICENSOR's actions and inactions as set forth above in improperly repudiating and terminating the License Agreement have violated the express requirements of the License Agreement and implied covenant of good faith and fair dealing and, thus, materially breached the License Agreement, causing damage to TASTE OF NATURE.

110.  As a result of LICENSOR's actions and inactions, as set forth above, TASTE OF NATURE has suffered and continues to suffer actual, concrete, and ongoing harm at least in the form of lost business, lost sales, and a decreased value of its good will.

111.  For example, LICENSOR's refusal to



, on the basis of its purported termination of the agreement has caused actual and direct harm and damages to TASTE OF NATURE, exceeding in actual damages of at least

112.  Further, the inability of TASTE OF NATURE to communicate effectively with LICENSOR in connection with the License Agreement has also caused damage to TASTE OF NATURE's goodwill and reputation.

113.  As set forth above, TASTE OF NATURE efforts to expand its business have also been thwarted by LICENSOR's alleged termination and threats to contact customers because

TASTE OF NATURE has been forced to reduce its sales efforts, including opportunities to present the licensed products to ████████████████████████████████████ and others. ████████████████████████████████████████████████

████████████████████████████████████████████████

114.    TASTE OF NATURE has suffered, and will continue to suffer, damages as a result of LICENSOR's ongoing breaches, and seeks an award of damages in an amount that that reflects, among other things, ██████████████████████████████

████████████████████████████████████████████████

████████, and other damages suffered by TASTE OF NATURE.

115.    Specifically, in negotiating the License Agreement, the parties contemplated the ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████.

116.    By improperly attempting to terminate the License Agreement without good cause shown and without providing any ████████████████████████████████, LICENSOR is causing TASTE OF NATURE to be damaged by, among other things, denying TASTE OF NATURE its rights under the License Agreement including the ████████████████████████

████████████████████████████████████████████████

██████████████████████████, and as set forth above in paragraphs 82 to 91.

117. In addition to the damages listed above, TASTE OF NATURE will suffer immediate irreparable harm if LICENSOR is permitted to terminate the License Agreement without cause and without providing TASTE OF NATURE with the ████████████████████

████████████████████████████████ including, without limitation, reputational harm and the loss of goodwill in the marketplace, for example, resulting from TASTE OF NATURE's inability to fulfill commitments to its customers and the associated harm to TASTE OF NATURE's customer relationships. These include relationships with customers who not only purchase products licensed under the Licensed Agreement, but also purchase TASTE OF NATURE's other unrelated products. Moreover, because products manufactured and sold under the License Agreement comprise such a significant portion of TASTE OF NATURE's overall business, LICENSOR's breach and improper termination of the License Agreement may result in a significant change in TASTE OF NATURE's operations, requiring TASTE OF NATURE to adjust plans for capital investment and future growth.

118. TASTE OF NATURE also seeks an order requiring specific performance of provisions of the License Agreement which are currently being breached by LICENSOR, and a preliminary and permanent injunction enjoining LICENSOR and all those in active concert or participation from taking any action to interfere with TASTE OF NATURE's distribution and other rights regarding the licensed products pursuant to the License Agreement.

119. Finally, TASTE OF NATURE seeks an award of reasonable costs and expenses in enforcing and/or interpreting the License Agreement in this lawsuit, including reasonable accounting and legal fees.

## **PRAYER FOR RELIEF**

WHEREFORE, TASTE OF NATURE prays for judgment against the Defendant MRS. FIELDS FAMOUS BRANDS, LLC and its parents, subsidiaries, affiliates, agents, servants, employees and all entities in active concert or participation with them, granting relief as follows:

A.     A declaration that TASTE OF NATURE has not breached or defaulted, and has performed its obligations, under the License Agreement;

B.     A declaration that MRS. FIELDS FAMOUS BRANDS, LLC had and has no basis to repudiate or terminate the License Agreement;

C.     A declaration that the License Agreement has not been terminated and that it continues to be in full force and effect;

D.     An order finding and adjudging that MRS. FIELDS FAMOUS BRANDS, LLC has materially breached the License Agreement by improperly repudiating and attempting to terminate the License Agreement and violating its implied covenant of good faith and fair dealing;

E.     Compensatory damages resulting from MRS. FIELDS FAMOUS BRANDS, LLC's breaches to the fullest extent provided in the License Agreement and under Illinois law in an amount to be determined at trial;

F.     An order requiring specific performance of the provisions of the License Agreement which are currently being breached by MRS. FIELDS FAMOUS BRANDS, LLC;

G.     An order entering a preliminary and permanent injunction enjoining MRS. FIELDS FAMOUS BRANDS, LLC and all those in active concert or participation with MRS. FIELDS FAMOUS BRANDS, LLC from taking any action to interfere with any and all of TASTE OF NATURE's rights entitled to it under the License Agreement;

E.      An award to TASTE OF NATURE of its attorney fees, costs and other expenses of litigation, under this Court's inherent authority as permitted by law, and as provided in the License Agreement; and

F.      Such other relief as this Court and the jury may determine to be proper and just.

## **DEMAND FOR TRIAL BY JURY**

In accordance with Fed. R. Civ. P. 38, TASTE OF NATURE hereby requests a trial by jury of all issues properly triable to a jury in this case.

Date:  December 9, 2024

Respectfully submitted,

*/s/ Ashley E. LaValley*

Christopher J. Lee
Brian E. Haan
Ashley E. LaValley
James D. Mitchell
**LEE SHEIKH & HAAN**
125 South Clark Street
Suite 1175
Chicago, Illinois 60603
Phone:    312.982.0062
Fax:     312.982.0071
Email:    clee@leesheikh.com
          bhaan@leesheikh.com
          alavalley@leesheikh.com
          jmitchell@leesheikh.com

*Attorneys for Plaintiff*
*Taste of Nature, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that he/she served or caused to be served a copy of the attached FIRST AMENDED AND SUPPLEMENTAL COMPLAINT – REDACTED PUBLIC VERSION upon counsel of record on December 9, 2024 via ECF:

>Nancy Anne Temple
>Jeffrey R. Tone
>Katten & Temple, LLP
>209 S. LaSalle Street, Suite 950
>Chicago, IL 60604
>(312) 663-0800
>ntemple@kattentemple.com
>jtone@kattentemple.com
>
>***Attorneys for Defendant***
>***Mrs. Fields Famous Brands LLC***

>*/s/ Ashley E. LaValley*
>Christopher J. Lee
>Brian E. Haan
>Ashley E. LaValley
>James D. Mitchell
>**LEE SHEIKH & HAAN**
>125 South Clark Street,
>Suite 1175
>Chicago, Illinois 60603
>Phone: 312.982.0070
>Fax:    312.982.0071
>clee@leesheikh.com
>bhaan@leesheikh.com
>alavalley@leesheikh.com
>jmitchell@leesheikh.com
>
>***Attorneys for Plaintiff***
>***Taste of Nature, Inc.***