# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TASTE OF NATURE, Inc., a California Corporation, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 22-CV-03261 |
| v. | ) ) | Hon. John J. Tharp, Jr. |
| MRS. FIELDS FAMOUS BRANDS, LLC, now known as FAMOUS BRANDS, LLC, a Delaware limited company, | ) ) ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

May 9, 2025

Nancy A. Temple
Jeffrey R. Tone
Anthony Nguyen
KATTEN & TEMPLE, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604
(312) 663-0800
ntemple@kattentemple.com
jtone@kattentemple.com
anguyen@kattentemple.com

Defendant Mrs. Fields Famous Brands, LLC, now known as Famous Brands, LLC ("Mrs. Fields") respectfully submits this memorandum in support of its motion for summary judgment.

**INTRODUCTION**

This case arises out of a commercial license agreement ("Agreement") between plaintiff Taste of Nature, Inc. ("TON") and Mrs. Fields, whereby Mrs. Fields gave TON the exclusive right to manufacture and market Mrs. Fields-branded products to certain retailers. After Mrs. Fields terminated the Agreement for cause on May 31, 2022, TON filed this two-count action on June 22, 2022, seeking a declaratory judgment that it did not breach the Agreement and alleging that Mrs. Fields breached by terminating the Agreement. Mrs. Fields moved to dismiss. In an Order dated November 18, 2024, the Court dismissed the complaint for lack of jurisdiction, permitting TON to file an amended complaint to attempt to plead injury-in-fact. Dkt. 36, PageID#411.

TON filed its First Amended Complaint, asserting the same two counts for declaratory judgment and breach of contract. TON adds the allegation that TON "expects LICENSOR's breach and ongoing assertions of termination will continue to cause actual, concrete, and ongoing harm to [TON] at least in the form of lost business, lost sales, and decreased value of its goodwill." FAC, ¶10, Dkt. 38, PageID#419. TON alleges that it lost an unspecified business opportunity, "exceeding in actual damages of at least $500,000." FAC, ¶84, Dkt. 38, PageID#447-448.

TON's alleged damages are conclusory and speculative, but there is no genuine dispute that the Agreement was terminated for cause on May 31, 2022. As this Court recognized, TON's claims rise and fall on whether Mrs. Fields terminated the Agreement for cause on May 31, 2022 (Dkt. 76, PageID#992), and for that reason, Mrs. Fields moved for summary judgment on January 24, 2025. On February 21, 2025, this Court granted TON's Rule 56(d) motion and allowed limited discovery on the two independent reasons Mrs. Fields terminated for cause: TON's violation of

1

the audit requirement in the Agreement (the "Audit Requirement") and TON's violation of the requirement that sales to value/deep discount/dollar stores not exceed 20% of total net sales "at any time" (the "20% Sales Limitation"). Dkt. 76, PageID#991. Magistrate Judge Fuentes set a discovery deadline of April 30, 2025, and denied Mrs. Fields the opportunity to take discovery of those topics of TON. Dkt. 86, PageID#1041.

TON argued in its Rule 56(d) motion that Mrs. Fields' stated reasons for termination for cause were false and unsupported, TON had provided all of the documents requested by Mrs. Fields in the audit, and TON did not violate the 20% Sales Limitation. Dkt. 70, PageID#904-907. TON conducted written discovery and took the depositions it requested of former Mrs. Fields CEO Nelson Tejada, former Vice President of Finance Julie Girardot, current CEO Joe Lewis, Mrs. Fields' Rule 30(b)(6) witness regarding the 20% Sales Limitation issues (Tejada), and Steven Gilroy of the audit firm Gingold & Co. Discovery confirmed that (1) TON violated the Audit Requirement by not providing financial documents requested commencing February 28, 2022 that were necessary to determine TON's compliance with the Agreement, (2) Mrs. Fields had objective information that TON had violated the 20% Sales Limitation in 2021 supporting the April 1, 2022 notice of breach of that provision. The evidence indisputably establishes that TON did not cure those breaches by May 31, 2022, beyond the 30-day cure period, and thus Mrs. Fields properly terminated for cause on May 31, 2022.

TON breached (1) by refusing to provide documents requested by Mrs. Fields relevant to determine whether TON was complying with the Agreement and reporting all sales of Mrs. Fields products; and (2) by selling more than 20% of Net Sales of Mrs. Fields products to value/deep discount/dollar store retailers and by continuing to refuse to acknowledge or provide a plan to cure that violation. The Agreement unambiguously gives Mrs. Fields the right to conduct an audit. The

Agreement also unambiguously gives Mrs. Fields the "sole discretion" to determine whether a particular retail store to which TON sold Mrs. Fields' products fell within the "value/deep discount/dollar store" category of "Designated Retailers" as defined in the Agreement. TON admits that it refused to provide the financial documents requested by Mrs. Fields, and TON's own quarterly sales reports reflect that more than 20% of its sales were sold to value, deep discount, or dollar stores. Mrs. Fields is entitled to judgment in its favor as a matter of law on Counts I and II.

## UNDISPUTED FACTS[1]

TON is a candy and snack food manufacturing company that makes and sells food products to be distributed and sold through retailers nationwide. Facts, ¶3. Mrs. Fields owns and licenses "Mrs. Fields" trademarks, which it uses in the restaurant and food service industry and with cookies, confectioneries, ice cream, and other baked goods. *Id.* ¶4. Mrs. Fields franchises stores that serve fresh-baked cookies, licenses the trademark and recipes to make and sell shelf-stable cookies for sale in retail stores, and sells gifts directly to consumers. *Id*.

In August 2017, TON and Mrs. Fields entered into the Agreement, which granted TON the exclusive right over a ten-year term to manufacture and market Mrs. Fields-branded, prepackaged cookies through Designated Distribution Channels, defined as "Designated Retailers and distributors to Designated Retailers." Facts, ¶¶1, 5; FAC, Ex. A, §§1(g), (h), 2. Designated Retailers was defined as "all businesses that sell products to consumers for their own use and consumption (and not intended for resale by such consumers)," including a list of 15 types of such businesses. Facts, ¶6, FAC, Ex. A, §1(h). One such listed type of business in Section 1(h) was "(x)

---

[1] Mrs. Fields' Local Rule 56.1 Statement of Undisputed Facts ("Facts") cites to the First Amended Complaint and its exhibits, and documents attached to the Rule 56.1 Statement: the Declarations of Steven Gilroy (Exhibit A), Joe Lewis (Exhibit B) and Nelson Tejada (Exhibit C), the deposition testimony of Julie Giardot (Exhibit D), Steven Gilroy (Exhibit E), and Nelson Tejada, who was also designated as Mrs. Fields' corporate representative on the 20% Sales Limitation topics (Exhibit F), and Exhibits 1-37.

value/deep discount/dollar stores (e.g., Dollar General and Dollar Tree); provided, however, that sales in this channel may not, *at any time*, exceed 20% of Licensee's total Net Sales from all Royalty Bearing Products . . . ." *Id.* (emphasis added). Section 1(h) provided that Mrs. Fields "shall have the right in its sole discretion to determine whether a specific store or distributor qualifies as a Designated Retailer." *Id.,* ¶8, FAC, Ex. A, §1(h). TON was required to report sales each quarter. Facts, ¶7.

> Section 7.2 of the Agreement gave Mrs. Fields the right to conduct an audit:
>
> > Throughout the Term and for at least thirty-six (36) months thereafter, Licensee shall maintain complete and accurate books of account and related documents such as vouchers and invoices relating to the financial obligations of Licensee to Licensor under this Agreement. Licensor and its agents and representatives shall have the right, at any time during normal business hours and with reasonable prior notice to Licensee, to enter any business locations of the Licensee at which any of such books of account and related documents are maintained and to inspect, review, copy and audit the relevant books and records and other documents and materials in the possession or control of the Licensee relating to this Agreement, *including, without limitation, such books, records, documents and materials as may be requested by Licensor in order to confirm that Licensee is in compliance with this Agreement* and any other requirements relating to quality, safety and food standards. Licensee shall reasonably cooperate with Licensor in facilitating any such audit.

Facts, ¶9 (emphasis added). Mrs. Fields had the right to terminate the Agreement immediately on written notice under certain circumstances, including "if Licensee fails to perform any other term or condition of this Agreement and such default continues unremedied for thirty days after Licensor's written notice of default." *Id.,* ¶10; FAC, Ex. A, §15.2(e).

<u>TON Breaches the Audit Requirement By Not Providing Documents.</u> On February 28, 2022, Mrs. Fields' then-CEO, Nelson Tejada, wrote TON's CEO, Scott Samet, informing TON that Mrs. Fields elected to conduct an audit pursuant to Section 7.2. Facts, ¶¶11, 12; FAC, Ex. J, PageID#473-474. Mrs. Fields provided a list of documents to have available and asked for a mutually agreed date within the following two weeks to inspect, copy and audit the relevant books

4

and records. Facts, ¶12; FAC, Ex. J, PageID#473. Mrs. Fields requested documents for the period 2018 to 2021, including financial statements, sales-level detail, and reconciliations of sales of Mrs. Fields products to TON's general ledger and financial statements to ensure TON had completely reported sales. *Id.* Mrs. Fields also invited TON to discuss if it made sense to conduct the audit remotely. *Id.*, PageID#474; Facts, ¶13.

On March 15, 2022, Mrs. Fields' Vice President of Finance, Julie Girardot, resent TON the same list of documents previously requested, asking that they be provided by March 31, 2022. Facts, ¶¶15, 16, Ex. 12. Based on discussions with TON, Mrs. Fields also provided a dropbox folder on March 15, 2022 so that TON could provide the requested audit documents electronically. Facts, ¶16, Ex. 12. By March 29, 2022, TON had not provided any documents in response to the audit request, and Girardot wrote, "I did meet with them so they know what they need to pull." Facts, ¶17, Ex. 13. Mrs. Fields followed up on March 31, 2022 because TON had not complied with the audit request (Facts, ¶18, Ex. 12), and that evening, TON emailed asking whether it may *start* sending *some* of the requested documents the next day, to which Mrs. Fields reminded TON of the deadline and told it to send documents as soon as possible. Facts, ¶18, Ex. 14. Between February 28, 2022 and March 31, 2022, TON did not offer dates in response to Mrs. Fields' request to inspect and copy books and records at TON's office, and TON did not object to the documents requested, to the March 31 deadline, or to providing documents electronically. Facts, ¶¶12, 16.

Mrs. Fields put TON on notice, in a letter dated April 1, 2022, of breach of the Audit Requirement and the 20% Sales Limitation, and gave TON the 30-day notice to remedy the breaches required by the termination-for-cause provision of the Agreement. Facts, ¶20, Ex. 31; FAC, Ex. L. The letter stated that TON had breached the Agreement by (1) failing to provide the documentation requested by Mrs. Fields to conduct the audit, (2) selling more than 20 percent of

5

Net Sales into the "value/ deep discount/ dollar channel," and (3) selling Royalty Bearing Products over the internet in violation of Sections 1(h), (j), and 2 of the Agreement. Facts, ¶20; FAC, Ex. L.

On April 2, 2022, TON provided some but not all of the requested documents electronically to Mrs. Fields. Facts, ¶¶19, 21. On April 8, 2022, Mrs. Fields sent a follow-up request to TON identifying the missing audit documentation that was needed. Facts, ¶23. TON did not provide the missing documents. Facts, ¶24. Instead, on April 8, 2022, TON's outside counsel claimed that TON was now demanding for the first time that the audit take place on its premises. *Id.*, Ex. 25; FAC, Ex. M. On April 26, 2022, Mrs. Fields responded that TON had made no demonstration to date of any cure to the defaults identified in the April 1 letter, but that it would send a representative to conduct the audit on TON's premises. Facts, ¶25, Ex. 26; FAC, Ex. N.

TON Did Not Cure Its Breach of the Audit Requirement. After TON had not provided the audit documents requested on February 28, 2022, and reversed course on April 8, insisting that Mrs. Fields or its representative inspect and copy documents on site, Mrs. Fields retained Gingold & Company to conduct a royalty compliance audit. Facts, ¶26. The purpose of the engagement was to audit compliance by TON with the Agreement, including ensuring completeness of the licensed sales data through an analysis of a sale summary for all sales (licensed and non-licensed sales) and reconciling these sales to the total sales reported in the licensee's financial statements. Facts, ¶26, Ex. A, ¶12. On May 3, 2022, TON and Mrs. Fields agreed that auditor Steven Gilroy would meet TON at their premises on May 9, 2022 and Mrs. Fields provided TON a copy of the auditor's questionnaire and document request list to help expedite the audit process. Facts, ¶31, Ex. 19.

On May 9, 2022, Gilroy visited TON's office in Santa Monica, California, to complete the fieldwork. Facts, ¶32, Ex. A, ¶10. Gilroy interviewed Scott Samet, president of TON, as part of

the audit procedures. Samet did not answer all of Gilroy's questions and withheld documents and information that Gilroy requested and deemed necessary to conduct the audit. Facts, ¶¶34-40. On May 9, 2022, TON refused to provide the following requested information: (a) financial statements, including any audited financial statements; (b) company-wide sales information of TON; and (c) a complete listing of licensed products reflecting all licensed and non-licensed products and all sales catalogs and price lists prepared for licensed articles. Facts, ¶34. This information is routinely requested in royalty audits and necessary to test to ensure completeness of the licensed sales data reported by the licensee. That information is also needed to reconcile the sales reported by TON to Mrs. Fields to the total sales reported in TON's financial statements to ensure TON was reporting properly all of the sales for Mrs. Fields products. Facts, ¶35. TON's refusal to provide this information was a "red flag" and scope limitation on the audit that precluded completion of the audit. Facts, ¶36. Gilroy documented in his fieldwork workpaper on May 9, 2022 his impression that TON was not an honest company and was withholding information. Facts, ¶38.

Gilroy also asked for the following additional information on May 9: (a) an invoice level sales report for all Mrs. Fields licensed articles for the engagement period; (b) a record of all payments made to Mrs. Fields during or covering activity from the engagement period; (c) a report of activity by vendor for all Mrs. Fields licensed articles purchased during the engagement period; (d) inventory records for each Mrs. Fields licensed product as of the start and end dates of the engagement period; and (e) all approved Marketing Plans for the engagement period and related advertising and promotion materials. TON did not provide that requested information. Facts, ¶37. On May 9, TON refused to perform a live run of its sales report system, but did so remotely the following day and failed that audit test. Facts, ¶40. On May 17, 2022, the auditor emailed TON a

7

list of outstanding document requests. Facts, ¶41. TON responded to the auditor's email on May 18, but did not provide the requested information. Facts, ¶42. To date, TON has never provided the information requested by Mrs. Fields and Gilroy to complete the audit. Facts, ¶43.

TON's Breach of the 20% Sales Limitation. By March 29, 2022, Mrs. Fields had reviewed TON's 2021 quarterly royalty or sales reports and determined that TON had sold over 20% of its total net sales to the value/deep discount/dollar store channel in the second (20.3%), third (36.2%), and fourth (22.7%) quarters, and for the entire year (24.7%). Facts, ¶44. The quarterly sales reports prepared by TON and delivered to Mrs. Fields for each quarter in 2021 and for the first quarter of 2022 reflect sales to the following value/deep discount/dollar stores: Dollar Tree Store, Inc., Ross Stores, Inc., Ollies, Five Below, Wright's Dollar Plus, Dollar Discount – TX, June Dollar Store Plus (store#2), Dollar D3pot, Dollar Fair – NY, Do Dollar Plus, Dollar World – KY, Dollar & More - IL, City Line Dollar, Dollar Mart – IL, Savvy Dollar, and Little River Dollar Store. Facts, ¶54. TON's sales reports show that for the second, third, and fourth quarter of 2021, the first quarter of 2022, and the full year of 2021, sales to these discount stores exceeded 20% of TON's total Net Sales from all of the Mrs. Fields-branded products. Facts, ¶¶44, 52-55.

Mrs. Fields included Ross Stores, Inc. in the value/deep discount/dollar store channel, citing Ross Stores' "about us" website page and noting that Google listed Ross Stores as a "discount store company". Facts, ¶¶45, 46. Tejada, who has 40 years of retail experience and is familiar with the fact that Ross Stores is a value or deep discount store, testified that Mrs. Fields reviewed and confirmed these facts before notifying TON that it was in breach of the 20% Sales Limitation. Facts, ¶¶45-46. Section 1(h)(x) of the Agreement provides: "value/deep discount/dollar stores (e.g., Dollar General and Dollar Tree) . . . may not, *at any time*, exceed 20% of Licensee's total Net Sales from all Royalty Bearing Products". FAC, Ex. A, §1(h)(x)(emphasis added). Mrs.

8

Fields sent written notice to TON of breach of this provision on April 1, 2022. Facts, ¶47. On April 8, 2022, TON's counsel argued without support that the 20% Sales Limitation was not based on a calendar year and asserted without support that the sales to value or deep discount stores during 2021 were less than 20 percent. Facts, ¶¶48, 49. On April 26, 2022, Mrs. Fields requested proof that TON had cured the breach of the discount sales provision. Facts, ¶50. Mrs. Fields never received any such demonstration. *Id.* Tejada, the corporate representative for the deposition of Mrs. Fields on the topic of the 20% Sales Limitation, testified that he expected TON to respond within 30 days of the written notice of default with information concerning an action plan to address the violation and plans to reduce the sales to that value/deep discount/dollar store channel. Facts, ¶51. Mrs. Fields received no such information from TON from April 1 to May 31, 2022. On May 4, 2022, TON delivered its first quarter 2022 royalty report, evidencing that TON had continued to breach Section 1(h)(x) by selling more than 20% of its Net Sales to value or deep discount stores. Facts, ¶52.

On May 31, 2022, almost two months after the April 1 letter giving TON 30 days to cure the breaches in the Agreement, Mrs. Fields provided written notice to TON of termination for cause, based on the first two issues raised in the April 1 letter – the breaches of the Audit Requirement and 20% Sales Limitation. Facts, ¶58, FAC, Ex. R. The May 31 letter described failures in the audit and refusals to provide requested documents, which prevented Mrs. Fields from auditing compliance with the Agreement. Facts, ¶58. The letter also stated that TON had not cured the value category sales default. *Id*.

TON responded on June 21, 2022, disagreeing with Mrs. Fields' basis for asserting a default, conceding that it had not provided all documents requested by the auditor, and asserting, without support, value or discount store sales were below 20 percent. Facts, ¶59; FAC, Ex. S. The

9

next day, June 22, 2022, TON sued Mrs. Fields. Dkt 1. TON has never provided any evidence for its assertion that discount store sales were in fact below 20 percent of total sales and has continued to violate the 20% Sales Limitation. Facts, ¶¶62, 64, 65.

Mrs. Fields's Additional Notices of Breach to TON. TON ignored the termination for cause on May 31, 2022 and has continued to manufacture and sell Mrs. Fields products. After receiving TON's second quarter 2022 sales report, on August 18, 2022, Mrs. Fields notified TON that it continued to violate the 20% Sales Limitation in §1(h)(x) of the Agreement. Facts, ¶64; FAC, Ex. T. After receiving TON's third quarter 2022 sales report, on November 4, 2022, Mrs. Fields notified TON that Mrs. Fields had provided at least three written notices of TON's continued breaches of the 20% Sales Limitation, giving Mrs. Fields an independent ground for immediate termination of the Agreement pursuant to §15.2(f) which states: "Licensor may terminate this Agreement, immediately on written notice, under the following circumstances:[…] If Licensee fails to comply with any term or condition of this Agreement for which Licensor has sent notice of breach on more than three (3) occasions during any 12-month period, regardless of whether such failure was cured by Licensee…" FAC, Ex. A, §15.2(f). Facts, ¶¶65, 66; FAC, Ex. W.

**ARGUMENT**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Springer v. Durflinger,* 518 F.3d 479, 483 (7th Cir. 2008). Once the moving party has met the initial burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Any "favor toward the nonmoving party does not extend to drawing '[i]nferences that are supported by only speculation or conjecture.'" *Harper v. C.R. England, Inc.,* 687 F.3d 297, 306 (7th Cir. 2012)

10

(citation omitted). "The mere existence of a scintilla of evidence in support of [the nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the nonmovant]." *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)).

The elements for a breach of contract claim under Illinois law[2] are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015). If "the language of the contract is facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence," *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999). Summary judgment is particularly appropriate in cases involving the interpretation of contracts. *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 564-65 (7th Cir. 1995). When the contract is unambiguous, a court determines the meaning as a matter of law. *Id.* A party's disagreement about the interpretation of a contract does not render it ambiguous. *Emergency Med. Care, Inc. v. Marion Mem. Hosp.,* 94 F.3d 1059, 1061 (7th Cir. 1996) (affirming summary judgment).

Count I seeks a declaratory judgment that (1) TON "fully performed all of its obligations under the License Agreement," (2) TON "did not breach or default under the License Agreement," (3) Mrs. Fields' termination of the Agreement for cause was "improper," and the Agreement remains in effect, and (4) TON is entitled to fees. FAC, ¶103. Count II claims that Mrs. Fields breached the Agreement by terminating it for cause under Section 15.2(e). FAC, ¶107. TON also alleges breach of an implied duty of good faith and fair dealing since the May 31, 2022 termination for cause, but fails to specify any contract term allegedly breached since that date. *See* FAC, ¶¶108-

---

[2] Illinois law applies pursuant to the Agreement's choice of law provision. FAC, Ex. A, §20.11.

114. All of TON's claims depend on whether Mrs. Fields properly terminated the Agreement for cause on May 31, 2022. If Mrs. Fields properly terminated for cause on May 31, 2022, TON is not entitled to a declaratory judgment in its favor stating the opposite, and similarly, if Mrs. Fields properly terminated for cause, Mrs. Fields did not breach as alleged by TON, the Agreement was terminated on May 31, 2022, and Mrs. Fields had no duties thereafter.

## I. THE UNDISPUTED FACTS ESTABLISH THAT MRS. FIELDS TERMINATED THE LICENSE AGREEMENT FOR CAUSE ON MAY 31, 2022.

There is no dispute that Mrs. Fields had the right to terminate immediately for cause if a default was not cured within 30 days of written notice of such default. FAC, Ex. A, §15.2(e). There is no dispute that Mrs. Fields sent such a written notice on April 1, 2022. FAC, Ex. L. That letter put TON on notice of a breach of the Audit Requirement and a breach of the 20% Sales Limitation. *Id.* TON admits that Mrs. Fields had the right to terminate for cause, and it admits that it received notice of a breach on April 1, 2022, more than 30 days before Mrs. Fields exercised the right on May 31 to terminate the Agreement pursuant to its terms. FAC, ¶¶56, 66. Either one of the two grounds for terminating the Agreement would have been sufficient on its own to terminate the Agreement for cause.

TON's argument that it was not in default as to those two matters is based entirely on its subjective interpretation of the Agreement's provision affording Mrs. Fields audit rights, and TON's conclusory assertion of what constitutes a sale to a value or deep discount store. But the Agreement is unambiguous on those points, and TON's subjective interpretation is immaterial. *Empro Mfg. Co., Inc. v. Ball-Co Mfg., Inc.,* 870 F.2d 423, 425 (7th Cir.1989) ("[I]f intent were wholly subjective there would be no parol evidence rule, no contract case could be decided without a jury trial, and no one could know the effect of a commercial transaction until years after the documents were inked.... '[I]ntent' in contract law is objective rather than subjective").

12

### A. TON Breached the Audit Requirement.

The Agreement unambiguously gives Mrs. Fields or its representatives the right "to inspect, review, copy and audit the relevant books and records and other documents and materials in the possession or control of the Licensee relating to this Agreement, including, without limitation, such books, records, documents and materials as may be requested by Licensor in order to confirm that Licensee is in compliance with this Agreement." FAC, Ex. A, §7.2. TON admittedly refused to provide requested financial statements and company-wide sales data that Mrs. Fields expressly requested and auditor Gilroy has explained were necessary to review and analyze to confirm that TON had reported all sales relating to Mrs. Fields-branded products, as required in the Agreement. Facts, ¶¶26, 31-43. TON also has admitted that it did not provide invoice records, purchase orders, payment histories, and sales records. FAC, Exs. R, Q; Facts, ¶43.

The Agreement does not afford TON the right to impose on its own any limitation on the documents or records to be provided to Mrs. Fields for the audit. TON rejected several of the auditor's requests on the ground that only documents relating to "Royalty Bearing Products" had to be provided for the audit. *See* FAC, Exs. Q, S. But Section 7.2 of the Agreement contains no such limitation and instead requires production of *all* records necessary to test for compliance. Girardot and Gilroy testified that the requested records were necessary to test for completeness and are regularly provided in audits. Facts, ¶¶21, 26, 31, 35, 41, 43. Because the Agreement is clear that this condition is of TON's own making, TON was unequivocally in default as to the Audit Requirement and did not cure by May 31, 2022. The breach of the Audit Requirement was grounds for termination pursuant to Section 15.2, and Mrs. Fields is entitled to summary judgment in its favor on this reason alone. *See, e.g., Sullivan v. Prestige Stone & Pavers Corp.,* No. 16cv3348, 2020 WL 2859006, at *3, *8 (S.D.N.Y. Feb. 4, 2020) (granting summary judgment for breach of

13

agreement requiring audit for failure to provide requested documentation); *International Union of Op. Engineers Local 98 Health & Welfare Fund v. S&R Corp.,* 95 F. Supp. 3d 1, 6 (D. Mass. 2015); *CBD970, LLC v. Labryrinth Holdings, Inc.,* No. 20-cv-617-DDD-KAS, 2025 WL 786529, at *5-6 (D. Colo. Mar. 12, 2025) (defendant breached contractual audit requirement by failing to provide requested documents necessary to conduct audit).

### B. TON Breached the 20% Sales Limitation.

There is also no genuine dispute that TON separately breached the 20% Sales Limitation. The Agreement provides that TON cannot exceed that limitation "at any time," and Mrs. Fields had the exclusive right in its "sole discretion" to determine whether a specific store was within this category. The undisputed evidence is that prior to notice of the breach, Mrs. Fields investigated and obtained documents supporting its conclusion that Ross Stores was in this category and also that Tejada not only has nearly 40 years of retail experience but has in fact visited Ross stores. Facts, ¶¶44-46. Mrs. Fields had objective, reasonable evidence supporting its determination. *See* Facts, ¶¶44-46; *see, e.g., MiMedx Grp., Inc. v. Fox,* No. 16 CV 11715, 2018 WL 558500, at *4 (N.D. Ill. Jan. 24, 2018) (dismissing breach of contract claim for termination with cause because contract gave company discretion to determine cause). There is no dispute that TON never responded to the notice of the breach of the 20% Sales Limitation with any support for its contention that that TON had not breached that provision, or with any action plans to address the violation. On the contrary, it continued to flout that requirement by violating it in the second and third quarters of 2022, giving rise to an independent reason for immediate termination as evidenced in Exhibit W to the Complaint. FAC, Ex. W; Facts, ¶¶64, 65, Exs. 21, 22.

### II. MRS. FIELDS IS ENTITLED TO JUDGMENT ON COUNT I FOR THE INDEPENDENT REASON THAT TON CANNOT SEEK A DECLARATORY JUDGMENT FOR ALLEGED PAST BREACH OF CONTRACT.

14

A "declaratory judgment action requires: (1) a plaintiff with a tangible, legal interest; (2) a defendant with an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Adkins Energy, LLC v. Delta Corp.*, 347 Ill. App. 3d 373, 376 (2004) (internal citations omitted). "An actual controversy does not exist where the matter 'has progressed so far that there is nothing left for the parties to do except file suit for damages or other consequential relief.'" *Allen v. Jackson Nat'l Life Distribs., LLC*, No. 12 C 9391, 2013 WL 1819927, at *9 (N.D. Ill. Apr. 30, 2013) (citing *Adkins Energy, LLC*, 347 Ill. App. 3d at 373). A declaratory action "is not the proper vehicle for presenting what are, in essence, plaintiff's breach of contract allegations." *Allen*, 2013 WL 1819927, at *9 (internal citation omitted). TON seeks a declaration that Mrs. Fields breached the Agreement by terminating for cause on May 31, 2022, and that TON did not breach. FAC, ¶10. TON effectively seeks a declaratory judgment on a past breach, which is not a viable cause of action.

## CONCLUSION

For the foregoing reasons, Defendant Mrs. Fields respectfully requests that this Court enter judgment in favor of Mrs. Fields on the two counts of Plaintiff's First Amended Complaint.

Dated: May 9, 2025

Respectfully submitted,

/s/ Nancy A. Temple
    Nancy A. Temple
    One of the Attorneys for Defendant

Nancy A. Temple
Jeffrey R. Tone
Anthony Nguyen
Katten & Temple, LLP
209 S. LaSalle St., Suite 950
Chicago, IL 60604
(312) 663-0800
ntemple@kattentemple.com
jtone@kattentemple.com
anguyen@kattentemple.com

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on May 9, 2025, I electronically filed the foregoing **Defendant's Memorandum in Support of Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system which sent notification of filing to all counsel of record.

/s/ Nancy A. Temple

Nancy A. Temple Katten & Temple, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604
(312) 663-0800
ntemple@kattentemple.com